# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS N. STANLEY, | 1:09-cv-1743 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 2) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 11, 12.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

# FACTUAL BACKGROUND

Plaintiff was born in 1949 and has a high-school education. (Administrative Record ("AR") 23-24.) Plaintiff previously worked as a machine operator and stopped working on March 1, 2003. (AR 17, 33, 113.) On August 8, 2007, Plaintiff filed an application for SSI, alleging disability beginning on March 1, 2003, due to schizophrenia. (AR 11, 83-90, 113.)

On March 21, 2006, Tulare County Mental Health progress notes indicate that Plaintiff was compliant with his medication, remained active during the day performing household chores, and worked for one week for a friend painting the interior of a home. (AR 197.) Plaintiff "is uncertain if he will search for work at this time because he is retired and receiving a retirement pension." (AR 197.) Plaintiff's reported symptoms included hearing "electrical noise" or "static," which he tolerated because he was "sleeping well at night." (AR 197.)

On June 19, 2006, Plaintiff reported working on construction projects with his brother. (AR 185.) On October 10, 2006, Plaintiff reported that he was helping build fish ponds. (AR 179.)

On September 20, 2007, Plaintiff's treating psychiatrist, Ina Shalts, M.D., completed a "medical source statement" form on which Dr. Shalts assessed Plaintiff's ability to do work-related activities on a daily basis in a regular work setting. (AR 237-38.) Dr. Shalts opined as follows:

- Plaintiff's ability to understand and remember very short and simple instructions was good, but Plaintiff's ability to understand and remember detailed or complex instructions was fair. (AR 237.)

- Because Plaintiff heard voices and experienced visual hallucinations, his ability to carry out instructions and to attend and concentrate was fair, but Plaintiff's ability to work without supervision was poor. (AR 237.)

- Plaintiff interacted primarily with his family, but Plaintiff's ability to interact with the public was poor. (AR 238.)

- Plaintiff's ability to be aware of normal hazards and react appropriately was good, but his ability to use public transportation or travel to unfamiliar places was fair. (AR 238.)

- Plaintiff could manage benefits in his own best interest. (AR 238.)

On October 20, 2007, Sasha Ericksen, M.D., performed a consultative psychiatric evaluation of Plaintiff. (AR 239-43.) Dr. Ericksen opined that Plaintiff was able to do simple tasks, but according to Plaintiff, his symptoms were exacerbated by loud noise. (AR 242.) Plaintiff was able to accept instruction from supervisors and to interact with coworkers and the public. However, "on certain days [Plaintiff's] psychotic symptoms are much worse and may distract him from interacting effectively." (AR 243.) Dr. Ericksen noted that Plaintiff "appears to have a history of performing work activities on a very consistent basis and doing well with his prior jobs." (AR 243.) Plaintiff reported to Dr. Ericksen, however, that "his psychiatric condition is somewhat uncontrolled and unpredictable as far as severity day by day and this may affect his ability to commit to a workweek and deal with stress." (AR 243.)

On November 13, 2007, Glenn K. Ikawa, M.D., a state agency physician, completed a psychiatric review technique form on which Dr. Ikawa assessed Plaintiff's functional limitations as a result of his psychiatric disorder. (AR 244-54.) Dr. Ikawa found that Plaintiff had (1) mild restriction in activities of daily living, (2) mild difficulties in maintaining social functioning, (3) moderate difficulties in maintaining concentration, persistence, or pace, and (4) no episodes of decompensation of extended duration. (AR 252.) Further, in assessing Plaintiff's mental residual functional capacity ("RFC"), Dr. Ikawa found that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, but Plaintiff was not otherwise significantly limited. (AR 255-56.) Dr. Ikawa opined that Plaintiff was able to sustain simple, repetitive tasks and to relate and adapt. (AR 257.)

Records from the Tulare Adult Clinic reveal that on February 8, 2008, Plaintiff reported to a case manager that his auditory and visual hallucinations were under control, he was compliant with his medications, and he was performing chores at home. (AR 235.) On February 14, 2008, Plaintiff was stable on medication and reported to Dr. Shalts that he was doing very well, not hearing voices, and sleeping and eating well. (AR 234.) On February 21, 2008, Plaintiff reported that his auditory hallucinations were under control and he did not have visual hallucinations at that time. (AR 309.)

1  On February 28, 2008, Plaintiff was cheerful and alert, reporting that he "had been helping with
2  chores around the house and outside in the yard." (AR 233, 308.) On March 6, 2008, Plaintiff
3  reported to his case manager that "today the auditory hallucinations are under control but that a
4  couple of days ago the 'noises' got stronger." (AR 232, 307.)

5        On December 12, 2008, Plaintiff reported to his case manager that he had been socializing
6  with his family, was compliant with his medication, and denied any problems. (AR 318.)

7        On January 8, 2009, Dr. Shalts noted that, although Plaintiff was still hearing voices
8  occasionally, his schizophrenia was stable on medication. (AR 319.) On January 28, 2009,
9  Plaintiff's psychiatric symptoms were reportedly mild and stable on medication, with which Plaintiff
10 was compliant. (AR 313-14.)

11       The Commissioner denied Plaintiff's application initially and again on reconsideration;
12 consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 36-
13 52, 55-61.) On April 2, 2009, ALJ James P. Berry held a hearing in which Plaintiff and a vocational
14 expert ("VE") testified. (AR 19-35.) The ALJ noted Plaintiff's testimony as follows:

15 > [Plaintiff] testified that he lives with his wife. He testified that he has schizophrenia
> and paranoia. He hears a constant screaming noise. He takes medication and
16 > receives counseling with a psychiatrist once every six weeks and sees a case worker.
> The noise in his head is so loud he vomits. Some days and some nights it is worse
17 > than other times. He usually only visits with people he knows. He has tea in the
> morning and watches television. He sometimes drives a car to his brother's home or
18 > [he] visits with his children. He has a good relationship with all his children.

19 (AR 15.)

20       A VE classified Plaintiff's past work as a machine operator as unskilled and heavy.[2] (AR
21 32-33.) The VE testified that a hypothetical person of Plaintiff's age, education, and work
22 experience could perform Plaintiff past work if that person could (1) perform simple, repetitive tasks,
23 (2) maintain attention, concentration, persistence, and pace, (3) relate to or interact with others,
24 (4) adapt to changes in work settings, and (5) adhere to safety rules. (AR 34.) Such a person could

---

26    [2] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, [the Commissioner] determine[s] that he or she can also do
27 medium, light, and sedentary work." 20 C.F.R. § 416.967(d).

not perform any work if that person could not maintain attention, concentration, persistence, or pace because of auditory hallucinations. (AR 34.)

On June 16, 2009, the ALJ issued a decision finding Plaintiff not disabled since the application date of August 8, 2007. (AR 8-18.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since August 8, 2007; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform his past relevant work. (AR 13-18.)

The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels involving simple, repetitive tasks. (AR 14.) In doing so, the ALJ gave (1) "substantial weight" to the opinions of Drs. Ericksen and Ikawa and (2) "some weight" to the opinion of Dr. Shalts. (AR 15-17.) In particular, the ALJ gave substantial weight to Dr. Ikawa's determination that Plaintiff was able to perform simple, repetitive tasks and was able to adequately relate and adapt in a work environment (AR 17). Further, the ALJ acknowledged Dr. Shalts' opinion regarding the impact of Plaintiff's hallucinations on his ability to work without supervision but found that "the medical record indicates [Plaintiff's] symptoms are well controlled with treatment and continue to be well controlled even with irregular use of medication." (AR 16.) "These symptoms continue to be controlled when [Plaintiff] is working outside the home and the treatment record reflects notations concerning [Plainitff] painting for a friend and working for his brother building fish ponds." (AR 16.) The ALJ also found that the medical record did not support Dr. Shalts' opinion that Plaintiff's ability to interact with the public was poor, nor did Dr. Shalts cite to any medical findings to support this opinion. (AR 16.)

Plaintiff sought review of this decision before the Appeals Council. On September 5, 2009, the Appeals Council denied review. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

On October 1, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ improperly considered the opinions of Drs. Shalts and Ikawa.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## REVIEW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are

demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.[3] *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**DISCUSSION**

**A.     The ALJ's Evaluation of Medical Opinions**

Plaintiff contends that the ALJ erred in ignoring or improperly considering the opinions of Drs. Ikawa and Shalts. In this regard, Plaintiff asserts that "the ALJ cannot disregard the significant probative evidence of a physician's opinion, even if contradicted by other evidence, without explanation setting forth 'specific and legitimate reasons.'" (Doc. 19 at 6, 7.) Defendant maintains, however, that substantial evidence supports the ALJ's interpretation of the medical evidence.

**1.     Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**2.     Analysis**

As noted above, Dr. Ikawa determined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (AR 252.) Dr. Shalts also opined that Plaintiff's ability to

interact with the public and to work without supervision was poor. (AR 237-38.) Plaintiff maintains that the ALJ erred in ignoring these doctors' findings.

### a.  Dr. Ikawa

Plaintiff asserts that the ALJ ignored Dr. Ikawa's finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. However, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The ALJ in this case gave substantial weight to Dr. Ikawa's determination that Plaintiff was able to perform simple, repetitive tasks and was able to adequately relate and adapt in a work environment (AR 17). Contrary to Plaintiff's assertion, in limiting Plaintiff to simple, repetitive tasks, the ALJ properly incorporated in his RFC finding Dr. Ikawa's opinion that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. *See id.* (holding that a hypothetical question concerning a medical expert's opinion of a claimant's limitation to simple, routine, or repetitive tasks sufficiently captures even a moderate limitation of concentration, persistence, or pace noted by the expert); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence, or pace and pronounced claimant as possessing the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration, persistence, or pace). Plaintiff's argument in this regard is, therefore, unavailing.

### b.  Dr. Shalts

Further, Dr. Shalts opined that Plaintiff would have a poor ability to interact with the public and to work without supervision because of his hallucinations. (AR 237-38.) Plaintiff's contention that the ALJ also erroneously ignored this opinion is without merit. The ALJ acknowledged Dr. Shalts' opinion regarding the impact of Plaintiff's hallucinations on his ability to work without

9

supervision but found that "the medical record indicates [Plaintiff's] symptoms are well controlled with treatment and continue to be well controlled even with irregular use of medication." (AR 16.) "These symptoms continue to be controlled when [Plaintiff] is working outside the home and the treatment record reflects notations concerning [Plainitff] painting for a friend and working for his brother building fish ponds." (AR 16.) The ALJ also found that the medical record did not support Dr. Shalts' opinion that Plaintiff's ability to interact with the public was poor, nor did Dr. Shalts cite to any medical findings to support this opinion. (AR 16.)

As an initial matter, the ALJ discounted Plaintiff's credibility in this case, relying on Plaintiff's reported daily living activities and the objective medical evidence to find that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC]." (AR 15.) Plaintiff has not challenged the sufficiency of the evidence supporting the ALJ's adverse credibility finding in this case or the adequacy of the ALJ's reasons given to explain this finding. Therefore, the Court considers the ALJ's unchallenged credibility finding to be binding.

Substantial evidence supports the ALJ's finding that Plaintiff was compliant with his medication regimen, which effectively controlled his schizophrenic symptoms. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (conservative treatment is sufficient to discount claimant's testimony regarding severity of impairment); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to medication). The ALJ also noted that the medical record and Plaintiff's reported activities of daily living did not support Dr. Shalts' opinion regarding Plaintiff's ability to interact with the public. (AR 15, 16.) Accordingly, Plaintiff's daily activities, his effective treatment regimen, and the lack of supporting medical evidence were both clear and convincing and specific

and legitimate reasons for the ALJ to discount Dr. Shalts' opinion regarding Plaintiff's ability to work without supervision and to interact with the public. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole, or by objective medical findings); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (claimant's daily activities provide relevant basis for rejecting treating physician's testimony); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (claimant's testimony inconsistent with examining psychologist's opinions was specific, legitimate reason to reject opinions).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Douglas N. Stanley.

IT IS SO ORDERED.

**Dated:   November 29, 2010**              **/s/ Sheila K. Oberto**
                                            UNITED STATES MAGISTRATE JUDGE